UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| PATRICK HAHN, and<br>ERIK REDWOOD, Administrator of the<br>Estate of Janet Louise Hahn, Deceased,<br><br>         Plaintiffs,<br>   v.<br><br>DANIEL WALSH, et al.,<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)     Case No.  09-2145<br>)<br>)<br>)<br>) |

# REPORT AND RECOMMENDATION

In June 2009, Plaintiffs Patrick Hahn and Erik Redwood, Administrator of the Estate of Janet Louise Hahn, deceased, filed a Complaint (#1) against Defendants Daniel Walsh, Deputy McCallister, Unnamed Champaign County Correctional Officers, Health Professionals Ltd., Unnamed Jail Nurse(s), County of Champaign, Illinois, Sylvia Morgan, Matthew Bain, Angela Menocci, and City of Urbana, Illinois.  In July 2009, Plaintiffs filed an Amended Complaint (#3).  Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331 because Plaintiffs have alleged violations of the United States Constitution and federal law.

In September 2009, Defendants Walsh, Health Professionals Ltd. (hereinafter "HPL"), and Champaign County filed a Motion To Dismiss Counts I, II, IV, V, VI, VII and VIII of Plaintiff's (*sic*) Amended Complaint (#17).  In September 2009, Plaintiffs filed a Response to County and HPL Defendants' Motion To Dismiss (#24).  After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendants' Motion To Dismiss Counts I, II, IV, V, VI, VII and VIII of Plaintiff's Amended Complaint **(#17)** be **GRANTED** in part and **DENIED** in part.

### I.  Background

The following background is taken from the amended complaint.  Plaintiff Patrick Hahn is the husband of the deceased, Janet Hahn.  At relevant times, Defendant Walsh was the Sheriff of Champaign County, Deputy McCallister worked as a deputy sheriff, and Defendants Morgan,

Menocci, and Bain worked as City of Urbana police officers. Defendant HPL provided medical and health care services to adult detainees and prisoners incarcerated in Champaign County jails. Defendants Unnamed Nurse(s) worked for HPL. Plaintiffs joined the County of Champaign, Illinois, pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 946 (7th Cir. 2003).

Plaintiffs have alleged that all individual Defendants were acting under color of law and within the scope of their employment at relevant times. Plaintiffs have sued Defendant Walsh in his official capacity, and Defendants McCallister, unnamed Champaign County correctional officers, unnamed jail nurse(s), Moran, Menocci, and Bain in their individual capacities.

Plaintiffs allege that Janet Hahn had diabetes as well as psychiatric problems including bipolar disorder, adjustment disorder, and borderline intellectual functioning. The Urbana Police Department and its officers were aware of Janet's medical conditions prior to June 15, 2007. On June 15, 2007, Urbana police officers arrested Janet for aggravated domestic battery and admitted her to the Champaign County Jail as a pretrial detainee. Before she was transported to the jail, John Hahn informed the arresting officers, including Defendants Menocci, Morgan, and Bain, that Janet had medical problems, was mentally unbalanced, and needed to go to the hospital emergency room. When Janet arrived at the jail, she told jail staff that she was diabetic. While incarcerated at the jail, Janet became seriously ill and repeatedly requested medical assistance by stating that she was diabetic and needed her doctor. At no time did anyone from the jail contact Janet's husband, doctors, or any other person to get Janet's medications or to obtain information about her medical conditions. Defendants refused Janet medical treatment to control her diabetes and she collapsed at the jail on June 18, 2007, and died the same day.

Plaintiffs' complaint alleges eight counts, as follows: Count I, against "one or more of defendants Walsh, Morgan, Bain, Menocci, McCallister, Un-named Champaign County Correctional Officers, Un-named Jail Nurse(s)" (#3, ¶ 22), alleges deliberate indifference to Janet's serious medical need in violation of the Fourteenth Amendment based on Defendants' failure to provide Janet with medical care. Count II, against Defendant Walsh, alleges deliberate indifference to Janet's serious medical need in violation of the Fourteenth Amendment based on

2

Walsh's failure to develop policies to identify and handle pretrial detainees who have serious medical conditions. Count III, against Defendant City of Urbana, alleges deliberate indifference to Janet's serious medical need in violation of the Fourteenth Amendment based on the City's failure to develop policies to identify and handle pretrial detainees who have serious medical conditions. Count IV, against Defendant HPL, alleges deliberate indifference to Janet's serious medical need in violation of the Fourteenth Amendment based on HPL's failure to develop policies to identify and handle pretrial detainees who have serious medical conditions. Count V, against Walsh, alleges failure to train and supervise; specifically, Walsh's failure to develop policies to monitor and discipline jail deputies to prevent illegal and unconstitutional behaviors against inmates at the jail. Count VI, against Champaign County and HPL, alleges violations of Title II of the Americans with Disabilities Act (42 U.S.C. § 12132 *et seq.*) (hereinafter "ADA"), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794). Count VII, against all Defendants, alleges loss of consortium. Count VIII, against HPL and unnamed jail nurses, alleges wrongful death under the Illinois Wrongful Death Act (740 ILCS 180/1 *et seq.*).

## II. Standard

The purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The United States Supreme Court has interpreted this language to impose two "easy-to-clear hurdles": First, the plaintiff must plead sufficient facts to give a defendant fair notice of the claim and the grounds upon which it rests, and second, those facts, if true, must plausibly suggest that the plaintiff is entitled to relief, "raising that possibility above a 'speculative level'." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

3

When considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations contained in the pleadings. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Furthermore, the Court must treat all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.,* 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl.*, 550 U.S. at 556 (requiring plausible grounds for inferences if those inferences are to sustain a complaint). A claim is sufficient only to the extent that it "'contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory'." *Bell Atl.,* 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)).

### III. Analysis
**A. Count I (Deliberate Indifferent to Serious Medical Need) Against Defendant Walsh**

Defendants first argue that Defendant Walsh cannot be held liable in Count I based on the doctrine of *respondeat superior* because he has been sued in his official capacity. Furthermore, to the extent that Plaintiffs are suing Walsh in his individual capacity, the Court should dismiss Count I for failure to allege personal involvement.

Plaintiffs expressly alleged in the complaint that they are suing Defendant Walsh in his official capacity. (#3, ¶ 5.) The parties agree that an official capacity claim against Walsh is actually a claim against the municipal entity, in this case the Champaign County Sheriff's Department. However, in their brief, Plaintiffs state that they intended to allege Count I against Walsh in his individual capacity. Plaintiffs request leave to amend the complaint to correct this error.

Assuming that Count I alleges a claim against Defendant Walsh in his individual capacity, Defendants also argue that Count I fails to allege Walsh's personal involvement because Plaintiffs alleged only that "one or more of defendants Walsh, Morgan, Bain, Menocci, McCallister, Un-named Champaign County Correctional Officers, Un-named Jail Nurse(s), after being made aware that Janet required emergency medical and/or psychiatric care, . . . failed or

refused to take Janet to a hospital emergency room . . . ." (#3, ¶ 22.) In support of their argument that this does not adequately allege personal involvement, Defendants rely on the Northern District case of *Brooks v. Ross*, and the decision affirming that case. *Brooks v. Ross*, No. 08 CV 2417, 2008 WL 5082995 (N.D. Ill. Nov. 25, 2008) (unreported), *aff'd*, 578 F.3d 574 (7th Cir. 2009). In *Brooks*, the plaintiff alleged in connection with Section 1983 claims that "one or more" of the defendants provided false or misleading information in conjunction with Plaintiff's indictment, arrest, and prosecution. The district court dismissed the claims, stating as follows: "Where a plaintiff makes allegations of a deprivation of constitutional rights generally, against all defendants, he fails to allege the 'element of personal involvement necessary for individual liability under section 1983,' and his allegations fail." *Id.* at *7 (citing *Brown v. Ill. Dep't of Pub. Aid,* 318 F. Supp. 2d 696, 699 (N.D. Ill. 2004)). The Seventh Circuit court agreed with the district court, stating that the phrasing "'one or more of the Defendants' . . . does not adequately connect specific defendants to illegal acts." *Brooks*, 578 F.3d at 580. Instead, the complaint must "specify a particular defendant as having engaged in certain acts." *Id.* The Seventh Circuit court also stated that the plaintiff adequately pleaded personal involvement where he specified that he was directing an allegation at all of the defendants. *Id.* at 582.

Plaintiffs attempt to avoid dismissal by pointing out that Paragraph 22 includes the names of all Defendants. However, the use of the disjunctive "or" in Paragraph 22 renders Plaintiffs' allegation too vague to connect specific defendants to the alleged conduct. Therefore, consistent with *Brooks*, this Court concludes that Count I does not adequately allege Defendant Walsh's personal involvement. Accordingly, the Court recommends dismissing Count I with leave to amend to correct the pleading error and to allege personal involvement.

### B. Count II (Deliberate Indifference Based on Failure To Establish Policies and Procedures) against Defendant Walsh

Count II alleges that Defendant Walsh was deliberately indifferent to Janet's serious medical need in violation of the Fourteenth Amendment when he failed to develop policies and procedures to identify and handle pretrial detainees who have serious medical conditions. As a result of Walsh's failure to develop and implement appropriate policies, the jail staff deprived

5

Janet of her constitutional rights. Count II is alleged against Walsh in his official capacity, therefore it is a claim against the municipal entity, in this case, the Champaign County Sheriff's Department.

Defendants argue that Plaintiffs failed to state a claim in Count II because (1) Count II simply recites the elements of the claim using conclusory language; (2) Plaintiffs failed to allege a pattern or series of incidents of unconstitutional conduct; and (3) Plaintiffs failed to allege causation. *See Harris v. City of Marion, Ind.*, 79 F.3d 56, 58-59 (7th Cir. 1996) (a municipality's failure to establish a policy in a situation that calls for one is actionable where the complaint otherwise alleges a constitutional violation; in that situation, "the plaintiff generally must allege a pattern or series of incidents of unconstitutional conduct or a clear constitutional duty to take action because the situation was certain to recur").

### 1. Conclusory Language

The Court disagrees that Plaintiffs have simply recited the elements of a claim using conclusory language; a review of the complaint shows that the allegations provide enough specific information regarding the claim to survive this argument.

### 2. Pattern or Series

Plaintiffs contend that they are not required to allege a series or pattern of incidents of unconstitutional conduct because Defendant Walsh was a final policymaker.

Under *Monell v. Department of Social Services*, a plaintiff may establish municipal liability for a deprivation of his constitutional rights only if he can show the existence of a municipal policy or custom and a sufficient causal link between the policy or custom and the constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978). Municipal liability can be established not just by proof of an unconstitutional policy or custom that causes an injury, but also by proof of a policy that, though not itself unconstitutional, nevertheless causes an unconstitutional deprivation. *See City of Oklahoma v. Tuttle,* 471 U.S. 808, 823 (1985). Thus, municipal inaction that leads to unconstitutional injuries may result in

municipal liability, even though the inaction alone is not unconstitutional. *Jones v. City of Chi.*, 787 F.2d 200, 204-05 (7th Cir. 1986).

"[I]In situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable." *Id*. at 204. An "extremely high degree" of municipal culpability is required to hold a municipality liable for a policy that is not itself unconstitutional, such as a municipality's failure to promulgate procedures or take corrective action. *Lenard v. Argento,* 699 F.2d 874, 875 (7th Cir. 1983). Generally, the failure to act must be the product of "deliberate indifference" to a plaintiff's constitutional rights. *Jones,* 787 F.2d at 205 (citing *Lenard*, 699 F.2d at 886); *see Avery v. County of Burke*, 660 F.2d 111, 114-16 (4th Cir. 1981) (failure to adopt procedures left certain activities to "the standardless discretion" of the individual employees and resulted in violation of constitutional right)). Stated another way, the municipality must be "aware either of actual deprivations or of such a strong likelihood of imminent (though unrealized) deprivations that any reasonable person would have taken preventative measures." *Jones,* 787 F.2d at 205 (citing *Jones v. City of Chi.,* 608 F. Supp. 994, 1000 (N.D. Ill. 1985)). Thus, before municipal liability may be imposed for a violation of a plaintiff's constitutional rights, a plaintiff must show that the municipality's "policy" of failing to do something was implemented in spite of its awareness, whether actual or imputed, that the likely consequences of that failure would be a violation of a plaintiff's rights. *See Jones,* 787 F.2d at 204; *see also Tuttle*, 471 U.S. at 823 (observing that a prerequisite to municipal liability is some sense that the municipality consciously chose a policy of inaction). A pattern or series of incidents can indicate a municipality's knowledge or awareness and, as a result, its deliberate indifference. *See Robles v. City of Fort Wayne*, 113 F.3d 732, 736 (7th Cir. 1997) (stating that the plaintiff could not "show that the City was deliberately indifferent to any need for the further training he espouses" because he had "produced no evidence of a pattern of similar violations or of the City's awareness of that pattern").

Based on these principles, the Court is satisfied that the allegations in Count II are sufficient to state a claim. Plaintiffs have alleged that Defendant Walsh failed to develop appropriate policies and procedures and this led to violations of Janet's constitutional rights.

7

Plaintiffs also alleged that Walsh was aware of the need for appropriate policies and procedures because six deaths had occurred in Champaign County Jail since mid-2004. (#3, ¶ 23.)

Defendants contend that the reference to the deaths does not satisfy the pattern or series requirement because Plaintiffs did not allege that any of these deaths were related to inadequate policies and procedures for identifying and handling pretrial detainees with serious medical and mental conditions. However, at this stage in the proceedings, Plaintiffs need not plead every detail and the Court can infer that the deaths are related to inadequate policies. As a result, the Court concludes that the allegations in Count II are adequate to state a claim. *See Weisberg v. City of Chi.*, No. 86 C 7776, 1987 WL 6875, *1-3 (N.D. Ill., Feb. 13, 1987) (unreported).

### 3. Causation

Defendants also contend that a "disconnect" exists between the alleged failure to implement necessary policies and the alleged constitutional violation of failure to provide Janet with necessary medical care, therefore, Plaintiffs have failed to establish causation. Specifically, Defendants contend that, because Janet informed jail staff that she needed medical assistance, the lack of adequate policies and procedures "to *identify* serious medical conditions could not possibly have caused the alleged constitutional violation as the serious medical condition." (#18, p. 9 (emphasis added).)

The Court notes that Plaintiffs allege more than the need to "identify" detainees with serious medical conditions; they also allege the need for policies to "handle" detainees with serious medical conditions. After reviewing the complaint, the Court finds Defendants' argument regarding causation unpersuasive.

The Court concludes that the allegations in Count II are adequate to put Defendants on notice of the basis for the alleged constitutional claim. Accordingly, the Court recommends denying the motion to dismiss Count II.

### C. Count IV (Deliberate Indifference Based on Failure To Establish Policies and Procedures) Against Defendant HPL

Defendants argue that Plaintiffs failed to state a claim in Count IV, stating that the reasoning set forth for the claim against Defendant Walsh also applies to the claim against Defendant HPL in Count IV that is based on the actions of the jail nurses.

For the reasons explained in Section B above, the Court finds that Plaintiffs have adequately stated a claim against HPL in Count IV. Therefore, the Court recommends denying the motion to dismiss Count IV.

Defendants also ask the Court to dismiss the claim or strike the reference to negligence in Paragraph 27, because negligence cannot form the basis for liability pursuant to Section 1983. Plaintiffs respond that the Court should ignore this argument because Defendants failed to cite supporting authority. Alternatively, Plaintiffs contend that negligence may rise to the level of deliberate indifference depending on what facts come to light through the discovery process.

Plaintiffs' alternative argument essentially concedes that deliberate indifference is required to state a constitutional claim. Although Defendants should have cited authority for their brief argument, it is well established that Section 1983 claims cannot be founded on negligence. *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006). As a result, HPL's liability, if any, must be based on its intentional conduct. However, the Court notes that Count IV is not based solely on negligence; Plaintiffs have also alleged deliberate indifference. At this stage in the proceedings, the Court declines to fine-tune the complaint; therefore the Court recommends denying the motion to strike the reference to negligence in Count IV.

### D. Count V (Failure To Train and Supervise) Against Defendant Walsh

Defendants next argue that Plaintiffs have not alleged enough facts to state a claim in Count V against Defendant Walsh based on his failure to develop policies and procedures to train and supervise jail deputies. Defendants also contend that Plaintiffs failed to state a claim because the complaint alleges a single incident of unconstitutional conduct, rather than a policy of unconstitutional conduct. *See Ibanez v. Velasco*, No. 96 C 5900, 1997 WL 467286, *2 (N.D. Ill. Aug. 13, 1997) ("Allegations of a single incident of unconstitutional conduct usually cannot form a sufficient basis for establishing a policy of unconstitutional actions.") (unreported). Defendants contend that Plaintiffs must allege facts that would support an inference that the improper conduct was caused, at least in part, by ignorance. *Id.*

Plaintiffs contend that a single incident is sufficient because Defendant Walsh, a final policymaker, was responsible for failing to develop policies to train and supervise jail staff.

The Seventh Circuit has explained the requirements for a failure to train claim, stating as follows:

> In *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L. Ed. 2d 412 (1989), the Supreme Court reiterated that a municipality may, in restricted circumstances, be held liable under § 1983 for constitutional violations resulting from its failure to train its police officers. *Id.* at 387, 109 S.Ct. at 1203-04. But the Court well circumscribed its holding: "The inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388, 109 S.Ct. at 1204 (footnote omitted). "Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury . . . . To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." *Id.* at 391, 109 S.Ct. at 1206.

*Palmquist v. Selvik,* 111 F.3d 1332, 1344 (7th Cir. 1997). Thus, to ensure that isolated instances of misconduct are not attributable to a generally adequate policy or training program, courts

require a high degree of culpability on the part of the policymaker. *Cornfield v. Consol. Sch. Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993). Along with a causation requirement, this standard ensures that the violation alleged is not too far removed from the policy or training challenged as inadequate. "Taken together, these two considerations amount to a requirement that liability be based on a finding that the policymakers have actual or constructive notice that a particular omission . . . is likely to result in constitutional violations." *Id*.; *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994) (to hold a municipality liable under a failure to train theory, a plaintiff must establish that the municipality was on notice of the constitutional violations committed by its inadequately-trained employees).

Count V alleges that Defendant Walsh knew of the need for appropriate policies and procedures to monitor and discipline jail deputies to prevent unconstitutional behaviors; nevertheless, he failed to develop and implement adequate policies and procedures, which enabled deputies to violate the constitutional rights of persons in custody. Count V also alleges that Walsh did this with reckless disregard and deliberate indifference. Count V incorporates by reference the allegation in Paragraphs 23 and 27 regarding the previous six deaths that had occurred at the jail since mid-2004. Based on these allegations, the Court concludes that Plaintiffs have adequately alleged a claim of failure to train and supervise. Accordingly, the Court recommends denying the motion to dismiss Count V.

### E. Count VI (Violation of the ADA and the Rehabilitation Act) Against Defendants Champaign County and HPL

Defendants next argue that the Court should (1) dismiss both claims because Plaintiffs have only alleged the elements in conclusory fashion and they have failed to allege that Defendants discriminated against Janet because of her handicap; (2) dismiss the ADA claim because monetary damages are not available to any private plaintiff for a violation of ADA anti-discrimination provisions; and (3) dismiss the Rehabilitation Act claim because Section 504 of the Rehabilitation Act is not the proper avenue for recovery for denial of medical benefits;

specifically, a plaintiff seeking relief under the Rehabilitation Act in a medical setting generally cannot establish that he is "otherwise qualified." *See Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 121 (7th Cir. 1997). Defendants also note that Plaintiffs cannot seek punitive damages under either the ADA or the Rehabilitation Act.

### 1. Monetary Damages Under the ADA

Defendants first argue that monetary damages are not available to a private plaintiff under the ADA, relying on *A.R. v. Kogan*, 964 F. Supp. 269, 271 (N.D. Ill. 1997). In that case, the Northern District court noted that A.R.'s claim was expressly based upon the ADA antidiscrimination provision in 42 U.S.C. § 12182(a) and the only type of enforcement available to a private plaintiff under that section is injunctive relief.

The ADA prohibits discrimination against the disabled in the areas of employment (Title I); public services, programs, and activities (Title II); and public accommodations (Title III). *Tennessee v. Lane,* 541 U.S. 509, 517-18 (2004). In *Kogan*, plaintiffs sought relief under Title III of the ADA (42 U.S.C. § 12182(a)), not Title II. In Paragraph 41, Plaintiffs expressly allege that the ADA claim in this case is based on Title II (42 U.S.C. § 12132). As a result, *Kogan* is not helpful to determining whether Plaintiffs may seek monetary damages under Title II of the ADA.

Title II provides as follows: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination." 42 U.S.C. § 12132. A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).

Title II of the ADA incorporates by reference the enforcement scheme found in Section 505 of the Rehabilitation Act. *See* 42 U.S.C. § 12133. Section 505 authorizes the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d *et seq.*]." 29 U.S.C. § 794a(a)(2). The Supreme Court has held that private individuals could recover compensatory damages under Title VI for intentional discrimination. *Guardians Ass'n v. Civil Serv. Comm'n of New York City,* 463 U.S. 582 (1983). Here, Plaintiffs allege that Defendants Champaign County and HPL intentionally discriminated against Janet because of her disability (#3, ¶ 41). Accordingly, consistent with the relevant statutes and case law on this issue, the Court concludes that a plaintiff may seek compensatory damages for a claim brought pursuant to Title II of the ADA.

### 2. Applicability of the Rehabilitation Act

Defendants also argue that the Court should dismiss the Rehabilitation Act claim. In support, Defendants rely on *Grzan v. Charter Hospital of Northwest Indiana*, in which the Seventh Circuit court stated that Section 504 of the Rehabilitation Act is not the proper avenue to recover for denial of medical benefits because a plaintiff seeking relief under the Rehabilitation Act in a medical setting generally cannot establish that he is "otherwise qualified." *See Grzan*, 104 F.3d at 121.

Defendants have oversimplified Plaintiffs' claim in Count VI. Here, the complaint alleges that Janet was eligible for medical treatment because she was a pretrial detainee; therefore, she was "otherwise qualified" for the benefit she sought. The complaint also alleges that Janet was handicapped based on her mental illness and that Defendants refused to provide medical care for Janet's diabetes and mental illness because of her "incoherent, erratic, uncooperative and/or irrational behaviors" (#3, ¶ 39), that is, her mental illness. These allegations distinguish the pending case from the fact situation in *Grzan*. *See, e.g., Kogan*, 964 F. Supp. at 271-72 (denying a motion to dismiss a Rehabilitation Act claim where a plaintiff who was handicapped by virtue of being HIV-positive alleged that a doctor and clinic discriminated against her on the basis of her HIV-positive condition by failing to treat medical conditions that could have been suffered by persons who were not HIV-positive). Accordingly,

13

the Court recommends denying the motion to dismiss the Rehabilitation Act claim based on the reasoning in *Grzan*.

### 3. Failure To State Claims

Defendants also argue that Plaintiffs failed to state a claim under either the ADA or the Rehabilitation Act because Plaintiffs alleged the elements in conclusory fashion.

To state a claim under Title II of the ADA, a plaintiff must allege that: (1) she is disabled as defined under the statute; (2) she was qualified for the benefits that she sought; (3) she was denied those benefits because of her disability; and (4) the defendant is a public entity as defined by the ADA. 42 U.S.C. § 12132; *Herdman v. Univ. of Ill.,* No. 96-8025, 1998 WL 774684, *6 (N.D. Ill. Oct. 28, 1998) (unreported) (describing elements of an ADA Title II claim)). To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must allege that: (1) she is disabled as defined under the statute; (2) she was qualified for the benefits that she sought; (3) she was denied those benefits because of her disability; and (4) the defendant was a recipient of federal funds. *Grzan*, 104 F.3d at 119; 29 U.S.C. § 794(a).

As to the ADA claim, the Court notes that Defendants did not discuss the elements of an ADA claim or indicate what elements Plaintiffs failed to allege. The complaint alleges that Janet was disabled under the ADA due to her mental illness (#3, ¶ 34), she was "qualified" to receive medical treatment by virtue of her status as a pretrial detainee (#3, ¶¶ 16, 30), and she was denied medical treatment because of her mental condition (#3, ¶ 39). Plaintiffs also allege that Champaign County and the Champaign County Jail are local governmental entities that are recipients of federal funds (#3, ¶ 30), thus Plaintiffs have alleged claims against Champaign County under both the ADA and the Rehabilitation Act. Accordingly, the Court recommends denying the motion to dismiss Count VI as to Champaign County.

As to the Rehabilitation Act claim, Defendants recited the elements for a claim and stated that Plaintiffs did not allege any facts to show that Janet was discriminated against "because of" her handicap, therefore Plaintiffs failed to establish a *prima facie* case under the Rehabilitation Act. Paragraph 39 alleges that Defendants refused to provide Janet with necessary medical treatment for her diabetes (and mental illness) "[a]s a punishment for Janet's incoherent, erratic, uncooperative and/or irrational behaviors" (#3, ¶ 39), i.e., her mental illness. This allegation adequately alleges why Defendants denied Janet medical treatment.

A review of the complaint shows that Plaintiffs have not alleged that Defendant HPL is a public entity for purposes of ADA liability or a recipient of federal funding for purposes of the Rehabilitation Act. It appears unlikely that HPL is a public entity as defined in the ADA. However, Defendants have not raised these questions, therefore the Court will not address the issues at this time. Accordingly, the Court recommends denying the motion to dismiss Count VI as to HPL.

### 4. Punitive Damages

Regarding punitive damages, Plaintiffs state that they are not seeking punitive damages for the claims in Count VI because Defendants Champaign County and HPL are "immune entity defendants." Accordingly, the Court recommends granting the motion to strike the prayer for punitive damages in Count VI.

### F. Count VIII (Wrongful Death) Against HPL and Unnamed Jail Nurses

Defendants next argue that the Court should dismiss the wrongful death claim because it is based on medical malpractice, and such a claim requires Plaintiffs to file an affidavit pursuant to 735 ILCS 5/2-622. Plaintiffs have failed to do so, and Defendants contend that the statute of limitations has now run on this state law claim.

Plaintiffs respond that they have satisfied the requirements of Section 2-622 because they alleged in the complaint that they were unable to secure the affidavit because Defendant Walsh refused to respond to a valid request for records. Plaintiffs also state that they have served interrogatories on Defendant HPL requesting information on interactions between HPL personnel and Janet that occurred while Janet was incarcerated. Neither Defendant has responded to these requests.

The Court disagrees with Plaintiffs' contention that they have satisfied the requirements of Section 2-622 by making allegations in the complaint. The statute provides that a plaintiff must file an affidavit declaring one of the following: (1) that the affiant has consulted and reviewed the facts of the case with a health professional; (2) that the affiant was unable to obtain a consultation with a health professional; or (3) that a request has been made by the plaintiff or his attorney for examination of records and the party required to comply has failed to produce such records within 60 days of the receipt of the request. 735 ILCS 5/2-622(a)(1-3). Under Section 2-622(a)(3), "the affidavit must state that counsel has made a request for records . . . and that the party to whom the request was made failed to comply within 60 days, whereupon the plaintiff is granted 90 days from the time the records are received to file the required report." *Hobbs v. Lorenz*, 786 N.E.2d 260, 263 (Ill. App. Ct. 2003). Thus, under any circumstances, a plaintiff must file an affidavit; an allegation in the complaint does not satisfy the statutory requirement.

Under Illinois law, if a plaintiff fails to satisfy the statutory filing requirement, dismissal is mandatory. 735 ILCS 5/2-622(g). However, courts have discretion to dismiss with or without leave to amend. *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice'." *Id.* at 614. Illinois courts liberally construe Section 2-622 so that plaintiffs do not lose substantive rights merely because they have not strictly complied with the statute. *Id.* at 613.

The Court recommends granting the motion to dismiss Count VIII because Plaintiffs failed to satisfy Section 2-622. The Court takes no position as to whether the dismissal should be with or without prejudice, leaving that to the discretion of the District Court. *See Hill v. C.R. Bard, Inc.*, 582 F. Supp. 2d 1041, 1046 (C.D. Ill. 2008)

### G. Count VII (Loss of Consortium) Against All Defendants

Defendants note that the loss of consortium claim does not specifically allege which underlying claims form the basis for the consortium claim; as a result, Defendants assume that Plaintiffs are relying on all claims as a basis for the consortium claim. Defendants then contend that federal law prohibits any loss of consortium claim pursuant to Section 1983 theories. *See Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005); *Thompson v. City of Chi.*, 472 F.3d 444 (7th Cir. 2006). In addition, Defendants contend that, because the wrongful death claim and the Section 1983 claims fail for the reasons they describe in their brief, no primary claims remain to support a derivative loss of consortium claim. *Blagg v. Ill. F.W.D. Truck & Equip. Co.*, 572 N.E.2d 920, 926 (Ill. 1991) (stating that a loss of consortium claim is a derivative claim that must be predicated on a claim of the directly injured spouse).

Plaintiffs do not directly address Defendants' arguments. Thus, it appears that Plaintiffs have abandoned their separate claim for loss of consortium. Instead, Plaintiffs rely on *Pitzer v. City of East Peoria, Illinois*, in which the district court stated that it would not conflict with federal law to incorporate the damages and survivorship provisions of the Illinois Wrongful Death Act into the Section 1983 claim alleged in that case, and thereby potentially allow the decedent's estate to recover for loss of consortium. *Pitzer v. City of E. Peoria, Ill.*, 597 F. Supp. 2d 806, 810 (C.D. Ill. 2009). Based on the *Pitzer* decision, Plaintiffs state that the "damages [for loss of consortium] are recoverable under a section 1983 cause and should not be dismissed. (#24, p. 13.)

According to *Pitzer*, when a constitutional violation results in the death of a married person, the estate may recover for the loss of consortium, society, and companionship experienced by the surviving spouse as a result of the death. The Court finds the reasoning in the *Pitzer* decision persuasive. Accordingly, the Court recommends granting the motion to dismiss the loss of consortium claim in Count VII and allowing Plaintiffs to amend their constitutional claims to include damages for loss of consortium.

### H. Punitive Damages

Defendants next argue that the Court should strike the requests for punitive damages in the Section 1983 claims against Defendants Walsh, Champaign County, and HPL. Defendants state that municipalities are immune from liability for punitive damages. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981). Walsh is immune because Plaintiffs sued him only in his official capacity. Defendants contend that HPL has been sued as a state actor and should be afforded the same immunity from punitive damages as a municipality. Defendants provided no authority to support the latter point.

The Court agrees with Defendants that Defendants Champaign County and Walsh in his official capacity are not liable for punitive damages under Section 1983. However, in the absence of authority, the Court cannot conclude that Defendant HPL is immune from liability for punitive damages on the grounds that it is a state actor for purposes of the Section 1983 claims. Accordingly, at this point, the Court recommends granting the motion to strike the request for punitive damages as to Defendants Champaign Count and Walsh in his official capacity and denying the motion as to HPL.

### I. Disqualification of the Estate Administrator

In their motion to dismiss, Defendants also argue that the Court should disqualify Erik Redwood from serving as co-administrator of the estate of Janet Hahn because he is married

to Plaintiffs' attorney and he is a part-time employee of the Redwood Law Offices, therefore creating an actual conflict of interest between the best interests of the beneficiaries and Mr. Redwood. Defendants provide no authority for this argument.

Plaintiffs note that the Champaign County Circuit Court appointed Mr. Redwood administrator and Defendants' request for disqualification impermissibly asks this Court to interfere with a state court order. The Court agrees with Plaintiffs and recommends denying Defendants' motion to disqualify Mr. Redwood as administrator at this time.

### J. Plaintiffs' Request for Sanctions

Plaintiffs acknowledge that Defendants' motion to dismiss is not wholly frivolous. However, they seek sanctions because Defendants repeatedly argued without providing authority and presented arguments that were clearly wrong without properly researching the law.

The Court agrees that some of Defendants' arguments challenged well-settled points of law. Nevertheless, the Court recommends that Plaintiffs' request for sanctions be denied.

### IV. Summary

For the reasons stated above, this Court recommends that Defendants Walsh, HPL, and Champaign County's Motion To Dismiss Counts I, II, IV, V, VI, VII and VIII of Plaintiff's Amended Complaint **(#17)** be **DENIED** as to Counts II, IV, V, and VI, and **GRANTED** as to Counts I, VII, and VIII. Because Plaintiffs can conceivably state a claim in Count I, the Court recommends that Plaintiffs be given leave to amend that claim. The Court expresses no opinion as to whether the dismissal of Count VIII should be with or without prejudice.

The Court also recommends as follows:

(1) that Defendants' motion to strike the reference to negligence in Count IV be **DENIED**;

19

(2) that Defendants' motion to strike Plaintiffs' prayer for punitive damages in Count VI be **GRANTED**;

(3) that Plaintiffs be allowed to amend the prayers for relief for the Section 1983 claims to incorporate damages for loss of consortium;

(4) that Defendants' motion to strike Plaintiff's request for punitive damages in the Section 1983 claims be **GRANTED** as to Defendants Walsh in his official capacity and Champaign County, and **DENIED** as to Defendant HPL at this time;

(5) that Defendants' motion to disqualify the estate administrator be **DENIED**; and

(6) that Plaintiffs' request for sanctions be **DENIED**.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten working days after being served with a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 24th day of November, 2009.

                                                s/ DAVID G. BERNTHAL
                                                U.S. MAGISTRATE JUDGE