10209-S1279
BMS/tlp

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

PATRICK HAHN and ERIK REDWOOD        )
Administrator of the Estate of JANET       )
LOUISE HAHN, Deceased,                     )
                                            )
        Plaintiffs,                         )
                                            )
    vs.                                     )     Law No.:      09-2145
                                            )
DANIEL WALSH, DEPUTY MATTHEW         )
MCCALLISTER, JENNA THODE, KAREE      )
VOGES, JEFFREY SHUMATE, ARNOLD       )
MATHEWS, CARL BROWN, HEALTH          )
PROFESSIONALS LTD., an Illinois            )
Corporation, NURSE SUSAN SWAIN,       )
COUNTY OF CHAMPAIGN, ILLINOIS,        )
SYLVIA MORGAN, MATTHEW BAIN,          )
ANGELA MENOCCI, CITY OF URBANA,       )
ILLINOIS, a Municipal Corporation,           )
                                            )
        Defendants.                         )

## DECLARATION OF JAMES L. CAVANAUGH, M.D.

Now comes the Declarant, James L. Cavanaugh, M.D., pursuant to 28 U.S.C. § 1746, and

states the following:

    1.      I am over 18 years of age, and I am under no legal disability.

    2.      The facts contained in this Declaration are within my personal knowledge. If

called upon to testify, I could and would competently testify to the facts contained in this

Declaration based on such personal knowledge.

1

**Exhibit 22**

3.      I hold a medical degree and have been retained by Defendants Daniel Walsh, Health Professionals, Ltd., and County of Champaign, to provide my opinions as to certain issues in the above-captioned case.

4.      The attached report, attached hereto, incorporated by reference herein, and marked as Exhibit A, is a true and correct copy of the report which I prepared and provided to Daniel Walsh, Health Professionals, Ltd., and County of Champaign relating to my opinions as to certain issues in the above-captioned case.

5.      The findings and opinions expressed in my report were based upon a review of records and were based upon a reasonable degree of medical certainty for a physician with my education, training, qualifications and experience. I still hold the opinions previously rendered in my report. If called upon to testify, I could and would competently testify consistently with the findings and opinions as set forth in my report.

6.      The attached *curriculum vitae*, attached hereto, incorporated by reference herein, and marked as Exhibit B, is a true and correct copy of the *curriculum vitae* which I provided to Daniel Walsh, Health Professionals, Ltd., and County of Champaign. My *curriculum vitae* details my qualifications, experience and background.

FURTHER THE DECLARANT SAYETH NOT.

s/ James L. Cavanaugh, M.D.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on  February 9, _____, 2012.

s/ James L. Cavanaugh, M.D.

2

# Cavanaugh & Associates

James L. Cavanaugh, Jr., M.D.

Janice S. Blaney
Administrative Manager

**Associates**

David W. Carrington, M.D.
Aimee St. Pierre, M.D.
Orest Eugene Wasyliw, Ph.D.

**Consultants**

Peter M. Fink, M.D.
Steven E. Rothke, Ph.D.
Abigail B. Sivan, Ph.D.
Lisa A. Rone, M.D.

April 30, 2011

Keith E. Fruehling
Heyl, Royster, Voelker & Allen
P.O. Box 129
Urbana, IL 61803-0129

Re:   <u>Your File No.</u> 10209-S1279
      <u>Case No.</u> 09-2145
      <u>Patrick Hahn and Erik Redwood, Administrator of the Estate of Janet Louise Hahn,</u>
      <u>Deceased v. Daniel Walsh, et al.</u>

Dear Mr. Fruehling:

Pursuant to your request, I and my colleague, Aimee St. Pierre, M.D., began a series of record reviews and analyses in this above-cited matter. Dr. St. Pierre's work on the case has been limited to preparation of attached record summaries. I am a board certified general and forensic psychiatrist, licensed in the state of Illinois and board certified in general psychiatry by the American Board of Psychiatry and Neurology and in forensic psychiatry by the American Board of Forensic Psychiatry. I am also the president and CEO of a forensic/correctional healthcare Illinois not-for-profit corporation, in which capacity I was responsible under the terms of a large contract from the County of Cook, to oversee the delivery of psychiatric and psychological services to detainees at the Cook County Jail between 1994 and 2010. Cook County Jail is the largest single site jail facility in the world and houses in the neighborhood of 1,000 mentally ill detainees (in an overall population of approximately 10,000) on any given day. I am familiar with the complex administrative, medical, psychiatric and at times legal issues associated with the care of mentally ill detainees, who often simultaneously have medical problems, behavioral problems, and complex, often dysfunctional, personality traits. My attached CV summarizes relevant issues in my career to date and an attached listing of forensic cases in which I have testified over the past several years is also enclosed. I have testified in both Federal and in state cases in many different jurisdictions throughout the United

EXHIBIT
**A**
ALL-STATE LEGAL®

Hahn Report
Page 2

States.  For professional services rendered in this matter to date, or will be rendered in the future, I am charging the following rates: $425 per hour for all time spent reviewing records and documents, report writing, or conferencing and $800 per hour for actual time of any testimony that might be provided in this matter.

RECORDS REVIEWED AND RELIED UPON IN FORMING OPINIONS IN THIS MATTER

I have reviewed numerous records, depositions, professional reports, investigative statements, etc. and have relied on these documents in the formation of my opinions in these matter. I have also relied upon my experience as a board certified general and forensic psychiatrist, over the past thirty-five years, along with my specialized knowledge and experience in correctional healthcare in forming my opinions in this matter:

Appendix I (see attached)
Appendix II (see attached)
Part II deposition of Louis Philipson, M.D. dated 3/10/11
Deposition of Patrick Hahn (8/26/10)
Deposition of John Hawn (10/11/10)
The report of Joseph E. Paris, PhD, M.D. dated 4/10/11
The 7/11/10 report of Louis H. Philipson, M.D., PhD
The Urbana Fire Rescue Services Report of 6/15/07
Urbana Police Department Records related to events of 6/19/07
An interview of Susan Swain conducted 6/19/07
Documents provided by your office dated 4/6/11 containing Rules of Civil Procedure (Rule 26): various jury instructions and committee comments related to 8th and 14th amendment federal lawsuits (7.02; 7.03; 7.12; 7.13; 7.14; 7.17; 7.18; 7.19; 7.20; 7.21) and a report and recommendation of the United States District Court, Central District of Illinois, related to this matter (David G. Bernthal, U.S. Magistrate Judge).

OPINIONS AND DISCUSSION

OPINION #1

The plaintiff, Janet Hahn, was competent to refuse medical treatment and alimentation, and to refuse to sign releases of medical information, until she was discovered in a comatose state around 6:20 a.m. on 6/18/07.  Paramedics were called and she was appropriately transferred to hospital where she subsequently died.  Prior to this time, there was no clinical indication that she was either psychotic, obtunded (unresponsive), in acute distress, or withdrawing from any substances.  Though

Hahn Report
Page 3

her IQ was borderline (estimated at 75), regarding treatment for her general medical condition, she demonstrated the ability to communicate choices, understand relevant medical information, and appreciate her situation; she had the capacity to select or reject treatment options. She was continuously monitored on suicide precautions with every 15-minute observations. She was repetitively evaluated/observed by correctional officers, nurses, and mental health specialists. Whether it was her intent to commit suicide by refusing medical intervention for diabetic control is speculation, and her death was determined to be of natural causes. Defendant did not cause her death; she died of complications of insulin-dependent diabetes, aggravated by her recurrent treatment-related refusals.

DISCUSSION

It is assumed that the vast majority of patients/detainees are capable of making their own medical decisions, even when these decisions could be medically inappropriate. As noted in a New England Journal of Medicine article (Appelbaum, PS. NEJM 357; 18; 1834-1840, 11/01/07): "In the absence of accompanying cognitive impairment, medical conditions such as unstable angina, diabetes mellitus, and human immunodeficiency virus infection have not been found to be associated with an incapacity for decision making. Only individuals with the severest impairments are to be considered for decisional incapacity". As noted in the same article (page 1838): "There is no clear standard against which clinical determinations can be measured , although sophisticated models of expert judgment are being developed".

Nurse Swain when interviewed on 6/19/07 (page 5) is noted as saying: "The last time Susan personally saw and spoke with Hahn was around 3 p.m. on Sunday, 6/17/07. Susan advised Hahn was holding 'normal conversation for her'. Hahn had some type of 'developmental problem' but Hahn was acting 'normal' for herself. Hahn was kind of 'angry' when she spoke about not wanting to be there, and expressing her dislike of where she was. Susan told us her 'behavior' was consistent with Hahn when she was incarcerated about two months ago. Susan did not see any type of 'outward symptoms'".

Borderline mental subnormality does not automatically result in decisional incapacity. Ms. Hahn clearly knew she was an insulin-dependent diabetic and what was required for its proper management. While accepting treatment for a hand laceration with the administration of antibiotic ointment, she rejected blood sugar checks. In his deposition of 9/2/10, Dr. Louis Philipson (page 52) notes that he was not suggesting that someone who is developmentally disabled is unable to have a say in their medical care - he noted she was taking care of herself (up to the time of this incarceration) but that he did not understand why she refused treatment.

Clearly she received that care and attention that she allowed, was continuously placed on suicide precautions and repetitively observed and evaluated (Illinois State Police Investigative

Hahn Report
Page 4

Summary).  Unless a patient/detainee is found to lack decisional capacity, it is a violation of civil rights/civil liberties to force, against their will, diagnostic evaluations or treatments.

Doctors Osview, Philipson and Hoffman do not opine that Ms. Hahn intended to commit suicide by refusing medical intervention.  For example, in his deposition of 9/20/10 (page 67) Dr. Osview notes it is his opinion that she acted in a self-destructive way but as to whether this was an intended suicide, he comments: "I am not sure she wished to die".  Individuals many times engage in self-destructive behavior, or utilize poor judgement, and thereby threaten or terminate their lives.  It is impossible to infer that the intent was necessarily suicidal.  The coroner's report notes that DKA (diabetic ketoacidosis) was the cause of her death (not suicide) and following an inquest, a jury returned a verdict of death by natural causes.

OPINION #2

The defendants were not deliberately indifferent to plaintiff's serious illness state and provided that care and attention consented to by plaintiff; her multiple refusals related to treatment and to giving consent for medical record/information, severely limited what care could be delivered; multiple assessments with reasonable documentation were completed.  Defendants were fully aware of the potential risks associated with plaintiff's illness states.

DISCUSSION

Starting with the initial arrest process (Urbana Fire Rescue Services Report of 6/15/07 where vital signs and a blood sugar reading of 96 was obtained), Ms. Hahn was repetitively examined, was observed (Illinois State Police Investigative Summary) and was encouraged to allow blood sugar testing, through at least late in the afternoon of Sunday, 6/17 (Swain Interview).  Due to her frequent contact with the Urbana Police and prior incarceration, Ms. Hahn's medical and behavioral health status was broadly known and appreciated.  Correctional officers who were not specifically aware that she was an insulin-dependent diabetic, would receive more information regarding her multiple conditions through the sign off reporting mechanism.

OPINION #3

There is no data to support an allegation that the defendants' various policies and procedures or supervisory/training protocols in any way condoned deliberate indifference in addressing the medical needs of incarcerated detainees, such as Janet Hahn, at the Champaign County Jail.  In fact, there were in place policies and procedures for the management of diabetic and suicidal detainees (Health Professionals, Ltd and Champaign County Policies and Procedures; Champaign County Sheriff's Office Policies and Procedures; Champaign County Sheriff's Office Medical Training -

Hahn Report
Page 5

10/06).  Two of plaintiff's experts (Daniel R. Hoffman, M.D. and Fred Osview, M.D.) provided no criticism of any of these then in place policies and procedures.

DISCUSSION

Some specific policies can be noted.  For example, Health Professionals, Ltd adopted on 11/11/01 the National Commission on Correctional Healthcare Clinical Guidelines for correctional facilities regarding diabetic chronic care.  The importance of testing of blood sugars is noted. Training and recognition of hypoglycemia is reviewed and a revised 5/1/06 medical protocol specifically deals with the management of diabetes type 1 insulin-dependent detainees.  Champaign County Jail healthcare policies and procedures as of 3/1/06 include issues related to access to care (page 24): "Inmates will have their serious healthcare needs met in a timely manner and without unreasonable barriers".  As of 3/1/06 specific policies and procedures regarding mental health screening and evaluation are noted, along with a specific suicide prevention program.  Champaign County Sheriff's Office policy and procedures include an orientation manual for residents revised 1/2000 dealing with access to medical and dental care and the adoption on 9/27/06 of q 15 minute satellite booking cell checks.  Finally, the Champaign County Sheriff's Office medical training program as of 10/06 includes Power Point presentations regarding diabetes type 1 and diabetic treatment protocols.

Just this brief selection of actual policies and procedures and training protocols belies any reasonable contention that defendants were deliberately indifferent in addressing the medical needs of incarcerated detainees.

OPINION #4

I disagree with the opinions of Dr. Fred Osview and Dr. Louis Philipson that include statements that defendants should have, without her consent, drawn blood to test for blood sugar, inserted a feeding tube, or initiated intravenous fluids.  I agree with Dr. Osview that it is not possible to know, as it would be speculative to state, if in fact she wished to die or if she had been taken to hospital (prior to her comatose state) that hospital staff would have been able to convince her to eat, to take her insulin, or accept blood sugar monitoring voluntarily.

DISCUSSION

Doctors Osview and Philipson have had no experience with correctional health/ mental health care or treatment in their careers.  Dr. Hoffman has had some such experiences on a limited basis.  The rights of detainees to refuse any aspect of medical/psychiatric treatment is even more firmly established than those rights are established for voluntary patients in general hospital.  As detainees are involuntarily held, special attention must be given to their rights of refusal, as

Hahn Report
Page 6

presumably they would not be in the jail setting on a voluntary basis. In hospital they would be much more likely to agree to suggested interventions and could leave at will. Unfortunately plaintiff's experts are not experienced in these considerations. For example, Dr. Osview in his deposition of 9/20/10 states (page 61): "They should have drawn her blood without her consent to test her blood sugar. They should have used a feeding tube or IV fluids to give her proper nutrition even if that was against her will". As previously stated, there is no clinical information suggesting lack of decisional capacity until she was discovered in a distressed state in the early A.M. of 6/18/07.

Appropriately Dr. Philipson indicates no opinion on whether any aspect of Ms. Hahn's behavior was motivated by a desire to end her life. Dr. Osview similarly expresses himself in his own deposition. Not only would it have been inappropriate for defendants to have essentially 'assaulted' Ms. Hahn by taking her blood or forcing nutrition upon her, both Doctors Osview and Philipson can't be sure that she would have accepted such treatment had she been transferred to hospital. For example, Dr. Osview (page 74) of his deposition notes: "Had she been taken to the hospital, I can't state with certainty whether they would have been able to convince her to eat or take insulin or have blood sugar monitoring". A judgement is required by correctional staff to overcome an otherwise absolute right to refuse treatment but such a judgement has to be informed by clear, convincing clinical information that the detainee is incompetent to refuse. No such data exists in this case until she is essentially comatose.

OPINION #5

I am in agreement with the observations and conclusions presented by Joseph E. Paris, M.D., PhD set forth in his report of 4/10/11 and more specifically his final summary (page 6): "In the case of Janet Hahn, undersigned found no instances where access to health care was impeded. All the care that had been ordered under protocol was delivered to Janet Hahn unless she refused to accept it. Janet Hahn was provided with the professional opinions of nurses and mental health staff while receiving care commensurate with the extent of her medical needs as perceived by these nurses and mental health staff. Medical and mental health staff did not knowingly disregard Janet Hahn's serious medical needs".

DISCUSSION

I have carefully reviewed Dr. Paris' report and find his chronology of relevant medical events and analysis of correctional health care delivered to Janet Hahn as factually correct and comprehensive. My review of the Illinois State Police Investigative Summary and the Champaign County Jail and Health Professionals, Ltd records provide similar findings, observations and conclusions. Deliberate indifference to the medical/mental health needs of Ms. Hahn is refuted by the actual weight of evidence to the contrary (Appendices I and II and other records/documents itemized

Hahn Report
Page 7

above).   Severely complicating the capacity of all professional staffs involved in caring for this detainee is her pattern of request refusals and her generally uncooperative behavior and demeanor which cannot be directly related to her apparent co-occurring bipolar mood disorder.   Refusals to grant medical studies or obtain relevant health care information or to be angry/irritated by forced incarceration are not diagnostic criteria of bipolar disorder.   Though a difficult detainee who is manifesting uncooperative behavior and is making poor judgements regarding her medical and nutritional needs, she has the constitutional rights to do so and there is no credible foundation in this case to argue that she is incompetent (on the basis of her mental subnormality, bipolar disorder, or insulin-dependent diabetes) until she is discovered to be in a comatose state.

OPINION #6

The report and depositions of Louis H. Philipson, M.D, PhD set forth various detailed opinions regarding alleged deviations in the standards of health care provided to Janet Hahn during her incarceration.   In aggregate, these opinions address alleged issues of negligence rather than the constitutional issues related to various claims of deliberate indifference that are the foundation of plaintiff's litigation.   In my opinion, Dr. Philipson incorrectly equates allegations of negligent medical care with the constitutionally required foundations for allegations of conscious disregard of or deliberate indifference to the serious medical needs of incarcerated detainees such as Janet Hahn (i.e. Jury Instructions, 8th and 14th amendments: failure to provide medical attention); definition of 'serious medical need'; definition of 'deliberately indifferent').

DISCUSSION

Dr. Philipson has basically applied a traditional negligence (malpractice) analysis in this matter, emphasizing in his opinion the extensive number of omissions of care and alleged deviations from standard of care that he, as an acknowledged authority on diabetes, would require presumably if he were caring for Ms. Hahn in this jail setting. I am quite concerned that Dr. Philipson is unable to dissociate himself form the world class indicia of patient care, teaching and research ongoing at the University of Chicago and the realities of correctional mental health care available in most jails and prisons.  Also, I am of the opinion that Dr. Philipson does not appreciate the meaning and significance of the term "deliberate indifference" and has been influenced by plaintiff's attorney in utilizing certain language that fits with the constitutional arguments being brought forth by plaintiff. For example, in his deposition of 9/21/10, Dr. Philipson defines "deliberate indifference" (page 39): "Deliberate indifference is there was not a specific plan for dealing with the situation at hand and that there was information available to have a higher standard or an acceptable standard that was overlooked". I do not believe that definition is consistent with jury instructions cited earlier related to deliberate indifference.  Further he is asked in the deposition of 3/10/11 what does "reckless disregard" mean. He responds (page 102): "My impression is that there is an understanding of the

Hahn Report
Page 8

facts and there is an action that happens despite their understanding of events". And finally later, in the same deposition, Dr. Philipson is being queried as to how he came up with the phrase "reckless disregard". He is asked by counsel (page 107): "But it's the phrase she used and therefore you incorporated it into your report. Answer: "I would say that's correct". Neither Doctors Osview nor Hoffman provide any medical opinions in this matter related to the concept of deliberate indifference.

OPINION #7

Finally, there is no reasonable foundation for plaintiffs allegations that the defendants refused to provide Janet Hahn with necessary medical treatment (i.e. were deliberately indifferent) for her medical needs because of her mental disabilities or borderline mental subnormality. Specifically, there is no data to support the allegation that Ms. Hahn was denied any form of treatment or supervision because of the presence of a mental disorder.

DISCUSSION

Even cursory review of the Champaign County Jail and Health Professionals, Ltd records of Ms. Hahn from previous incarcerations through the June 2007 incarceration indicates a full awareness of medical/mental problems of the detainee, documents numerous interactions and interventions, and notes recurrent difficulties with her refusals and, at times, lack of cooperation. In total, these records refute allegations of plaintiff that defendants refused to provide treatment or were deliberately indifferent to her because of her mental disabilities. For example, in February 2007, a mental health worker progress note (2/8/07) described her as alert, oriented with normal affect and speech. She was most upset about DCFS taking custody of her baby girl in June 2006. She was diagnosed with mild mental retardation and a mood disorder and a blood sugar and insulin tracking sheet was established. In May of 2007 it was noted that she was diabetic and took insulin. She did not show signs of depression, emotional flatness, crying or anxiety. Her thought content was described as appropriate. She refused to disclose any medical history except that she was an insulin-dependent diabetic. She refused to sign a release and would not reveal who her doctor was. Nurse Susan Swain on 5/6/07 sent an email, in part stating: "She refuses to sign a release of information and will not tell me who her doctor is or where she seeks treatment. She will be leaving tomorrow and states she will not eat while she is here. She has pretty much tied my hands as far as helping her goes. Please bring her to the infirmary to test her blood sugar tonight and tomorrow morning, but I am not sure she will cooperate with the test". On the same day a mental health progress note indicated Ms. Hahn stated she was an insulin-dependent diabetic but refused to sign release of information for medical.

Hahn Report
Page 9

　　　Extensive observations and attempted interventions with her during the June 2007 admission are also documented.  In an initial classification listing on 6/15/07 it was noted that the arresting officer was aware of suicide/harm threat.  It was further noted that she was belligerent, abusive and argumentative and not cooperative, but showed no visible signs of sweating, vomiting or coughing.  Later on the same evening she flooded her cell by flushing her gown down the toilet; mental health and nursing were notified to see her the next A.M. and her blood sugar was checked.  On 6/16/07 doctor's orders noted that she was diabetic and had developmental retardation and was to get an evening snack and Accu-Cheks bid and insulin per sliding scale.  A blood sugar and insulin tracking sheet was established, along with a segregation log and a suicide watch protocol.  Further in the A.M. of 6/16/07 an extensive initial mental health screening and assessment was conducted and documented, indicating that she was not incoherent, denied a present suicide plan but was feeling guilty and worthless.  Her thought content was described as appropriate, though she demonstrated an uncooperative attitude.  On 6/17 at 7:55 a.m. a mental health/medical special watch sheet indicated high risk for suicide.  She was checked every 15 minutes from midnight on 6/18/07 until discovered in need of medical assistance around 6:20 a.m. on the same date.

　　　These records, along with Illinois State Police Investigative Summary Records (previously noted above), provide ample evidence that Ms. Hahn was a detainee well known to the various staffs, had both medical and mental health disabilities, was in need of various medical services (but often refused), was at times uncooperative, but was usually noted as coherent, and demonstrating reasonable thought content, though clearly depressed and upset about various issues in her life, including the 6/07 incarceration.  She was not in any manner avoided, or treated in a deliberately indifferent fashion because of either her mental disabilities or borderline mental subnormality.

　　　Please contact me if I can be of further assistance in this matter.

Sincerely,


s/James L. Cavanaugh, M.D.

**CURRICULUM VITAE**                        Revised 4/21/11

**JAMES L. CAVANAUGH, M.D.**

| | |
|---|---|
| Born: | Washington, D.C. -          1941 |
| Diplomat: | American Board of Psychiatry and Neurology, October, 1974<br>American Board of Forensic Psychiatry, October, 1983 |
| Professional Address: | Cavanaugh & Associates<br><br>( |
| Marital Status: | Married |
| Wife's Name: | Stephanie von Ammon Cavanaugh, M.D. |
| Wife's Occupation: | Professor of Psychiatry<br>Rush Medical College<br><br>Chief, Section of Internal Medicine/Psychiatry<br>Internal Medicine/Psychiatry Section<br>Rush University Medical Center |
| Children: | Brendan (38 years)<br>Margaret (35 years) |
| Degrees: | A. B., Williams College, 1963<br><br>M.D., University of Pennsylvania<br>School of Medicine, 1967 |
| Licensure: | State of Illinois (No. 36-43121) |

## ACADEMIC AND HOSPITAL APPOINTMENTS

Professor
Department of Psychiatry
Rush Medical College, 1988 -

Chairman of the Board
Isaac Ray Center, Inc., 1991-

President
Isaac Ray Center, Inc., 1986-1990, 1994-2008, 2009-present

Senior Associate
Cavanaugh & Associates Chicago, IL 1985 -

Director, Section on Psychiatry and the Law
Department of Psychiatry
Rush University Medical Center, 1978 - 2008



James L. Cavanaugh, Jr., M.D.
Page 2

## ACADEMIC AND HOSPITAL APPOINTMENTS (cont.)

Medical Director
Isaac Ray Center
Department of Psychiatry
Rush University Medical Center, 1978 - 1987

Associate Professor
Department of Psychiatry
Rush Medical College, 1979 - 1988

Assistant Professor
Department of Psychiatry
Rush Medical College, 1974 - 1979

Chairman, Committee on Student Affairs
Rush Medical College, 1977 - 1979

Committee on Admissions
Rush Medical College, 1979 - 1980

Associate Attending
Rush University Medical Center, 1979 -

Clinical Director
Department of Psychiatry
Rush University Medical Center, 1973 - 1976

Faculty, Continuing Education in Psychiatry
Institute of the Pennsylvania Hospital
(Sydney Pulver, M.D. Director), 1971 - 1973

Staff Assistant
Institute of the Pennsylvania Hospital, 1971 - 1973

Instructor in Psychiatry
Institute of the Pennsylvania Hospital, 1971 - 1973

Assistant Instructor in Psychiatry
University of Pennsylvania, 1970 - 1971

James L. Cavanaugh, Jr., M.D.
Page 3

<u>ACADEMIC AND HOSPITAL APPOINTMENTS</u> (cont.)

Senior Resident in Psychiatry, Inpatient & Consultation Service
Hospital of the University of Pennsylvania, January - July, 1971

Clinical Assistant in Psychiatry
Maudsley Hospital, London, England, October - December, 1970

Fellow in Psychiatry
Hospital of the University of Pennsylvania, 1968 - 1970

Internship (Rotating)
Cook County Hospital, Chicago, IL, 1967 - 1968

<u>OTHER APPOINTMENTS</u>

President, Medical Student Body
University of Pennsylvania, 1966 - 1967

U. S. Navy, July, 1971 - July, 1973
        Lt. Commander, Department of Neuropsychiatry
        U.S. Naval Hospital, Philadelphia
        Staff Psychiatrist, Inpatient Services, 1971-1972
        Chief, Consultation Service, 1972 - 1973

Teaching Consultant
West Philadelphia mental Health Consortium, 1971 - 1973

Consultant, Philadelphia Police Department
(Division of Community Relations), 1972 - 1973

Chairman, Legislative Liaison Committee
Illinois Psychiatric Society, 1975 -1980

Member, Council of Governmental Affairs
Illinois State Medical Society, 1976 - 1980

Member, Joint Commission on Government Relations
American Psychiatric Association, 1976 - 1979

Fellow, The Institute of Medicine of Chicago, 1976 -

Member Federal Judicial Panel
(<u>Harrington v. Levitt</u>, Judge Frank McGarr), 1977 - 1980

Consultant, AMA National Jail Project, 1978 - 1979

James L. Cavanaugh, Jr., M.D.
Page 4

<u>OTHER APPOINTMENTS</u> (cont.)

Member, Committee on State Legislation,
Illinois Hospital Association, 1978 - 1979

Chairman, Subcommittee on Mental Health
Committee on State Legislation
Illinois Hospital Association, 1978 - 1983

Chairman, Committee on Mental Health
Illinois Hospital Association, 1979-1983

Consultant, Superintendent of Police, Chicago, 1979 - 1989

Commissioner, Guardianship and Mental Health Advocacy Commission
State of Illinois (appointed by Governor), 1979 - 1981

Consultant, Office of the U.S. Attorney, Washington, D.C.
<u>United States v. John Warnock Hinckley, Jr.,</u> 1981 - 1982

Commissioner, Legislative Commission on Mental Health and Developmental Disabilities
(appointed by Governor), 1982 - 1985

Consultant, Federal Bureau of Investigation
Behavioral Sciences Unit, Quantico, VA, 1982 - 1989

Consultant, Illinois Department of Mental Health and Developmental Disabilities
(to review State mental health systems, appointed by Governor), 1982 - 1983

Board of Directors, Corporation for the Advancement of Psychiatry, 1982 - 1985

Consultant, Federal Bureau of Investigation, Washington, D.C., 1983 - 2002

Board of Directors, Mental Health Association of Greater Chicago, 1983 - 1991
         Vice President for Public Policy, 1984 - 1986
         Advisory Board, 1991 - 1994

Consultant, U. S. Secret Service, Washington, D.C., 1984 - 2007

Assistant Examiner, American Board of Psychiatry and Neurology, 1976 -

Commissioner, Governor's Task Force on Future of Mental Health in Illinois, 1986 - 1987

Law Advisory Council, DePaul University College of Law, 1989 - 1999

Member, Chicago Psychiatric Research Consortium, 1989 - 1991

Board of Directors, Institute on Genetics, Law & Ethics
Illinois Masonic Hospital, Chicago, 1992 – 1995

Board of the National Institute for the Study, Prevention, and Treatment of Sexual Trauma, 1994

James L. Cavanaugh, Jr., M.D.
Page 5

## OTHER APPOINTMENTS (cont.)

Visiting Professor, Department of Psychiatry
University of New South Wales,
Sydney, Australia, 1994

Visiting Professor of Forensic Psychiatry,
Associacao Medica do Rio Grande do Sul
Porto Alegre, Brazil, 1994

Consultant:
    International Center for Health, Law and Ethics
    Committee on Medical Experimentation on Prisoners, Haifa, January, 1998

Reviewer:
    Bulletin of the American Academy of Psychiatry and the Law

Editorial Boards:
    American Journal of Forensic Psychiatry, 1979 - 1981
    The Bulletin of the American Academy of Psychiatry and the Law, 1980 - 1989
    Behavioral Sciences and the Law, Founding Editor, 1981 - 1987, Editor Emeritus, 1988 -
    Journal of Interpersonal Violence, 1985 - 1990
    Violence Update, 1989 - 1995
    Acta Sexologica, 1994 - 1998
    International Journal of Offender Therapy and Comparative Criminology, 1997 -
        Associate Editor, 1998 -

## NOTEWORTHY ACHIEVEMENTS

Listed in the 2nd and 3rd edition of The Best Doctors in America, 1993 - 2006 (published by Wood-
ward/White, Inc.), for being cited by his peers as one of the best in the field of Forensic Psychiatry.

Isaac Ray Center received the Certificate of Significant Achievement Award, from the American Psychiat-
ric Association, September, 1983.

## SUMMER AFFILIATIONS

Jackson Laboratory
Bar Harbor, Maine
        Pre-College Student, 1957
        College Student, 1960 - 1961
        Summer Staff Assistant, 1962 - 1963

## SCIENTIFIC AFFILIATIONS

American Psychiatric Association, Member, 1970
        Fellow, 1976

James L. Cavanaugh, Jr., M.D.
Page 6

## SCIENTIFIC AFFILIATIONS (cont.)

American Psychiatric Association, Member, 1970 -
    Fellow, 1976 – 2003
    Distinguished Fellow, 2003 -
Royal College of Psychiatrists, London, Affiliate, 1971 – 1990
Association for Academic Psychiatry, 1973 - 1986
Chicago Medical Society - 1973 -
Illinois Psychiatric Society, 1973 -
    President-Elect, 1979 - 1980
    President, 1980 - 1981
American Medical Association, 1976 -
American Academy of Psychiatry and the Law, 1977 -
    Chairman, Program Committee, 1979 - 1980
    Member, Education Committee, 1980 - 1984
    Councilor, 1981 - 1984
    President, Midwestern Chapter, 1986 - 1987
    Secretary, 1986 - 1988
Member, American Academy of Forensic Sciences, Section of Behavioral Sciences, 1979 - 1996
Member, American College of Psychiatrists, 1980 - 1988
    Committee on Publications, 1984 - 1986

## BIBLIOGRAPHY

### PAPERS

Howard, J.J., Cavanaugh, J.L.: Violence Risk Assessment: Part I. Psychopharm Review, 2010; 45 (10): 75-82.

Howard, J.J., Cavanaugh, J.L.: Violence Risk Assessment: Part II. Psychopharm Review, 2010; 45 (11): 83-90.

Kravitz, H.M, Cavanaugh, J.L, Rigsbee, S.S: A cross-sectional study of psychosocial and criminal factors with arrest in mentally ill female detainees. The Journal of the American Academy of Psychiatry and the Law, 2002, 30(3):380-390.

Brakel, S.J., Cavanaugh, J.L., Of psychopaths and pendulums: Legal and psychiatric treatment of sex offenders in the United States. New Mexico Law Review, 2000; 30(1):69-94.

Brakel, S.J., Cavanaugh, J.L., Fletcher, T.A.: Violence in the workplace: New perspectives in forensic mental health services in the USA. British Journal of Psychiatry, 2000; 176:339-344.

Brakel, S.J., Cavanaugh, J.L: Crime, psychiatry and the insanity defense: A report on some recent reforms in the United States. Australian and New Zealand Journal of Psychiatry, 1996; 30: 134-141.

Brakel, S.J., Cavanaugh, J.L: Law and psychiatry in the USA and UK: Another perspective. Criminal Behavior and Mental health, 1996; 6:28-39.

Brakel, S.J., Gonzales, E.R., Cavanaugh, J.L: Neuropsychiatry at the courtroom gates: Selective entry or anything goes? Seminars in Clinical Neuropsychiatry, 1996; 1(3):215-221.

James L. Cavanaugh, Jr., M.D.
Page 7

Haywood, T.W., Cavanaugh, J.L: Sexual deviancy. Current Opinion in Psychiatry, 1996; 9(6):384-388.

Haywood, T.W., Kravitz, H.M., Wasyliw, O.E., Goldberg, J., Cavanaugh, J.L: Cycle of abuse and psycho-pathology in cleric and noncleric molesters of children and adolescents. Child Abuse & Neglect, 1996; 20(12):1233-1243.

Kravitz, H.M., Haywood, T.W., Kelly, J., Liles, S., Cavanaugh, J.L: Medroxyprogesterone and paraphiles: Do testosterone levels matter? Bulletin of the American Academy of Psychiatry & Law, 1996, 24(1):73-83.

Haywood, T.W., Kravitz, H.M., Grossman, L.S., Cavanaugh, J.L., Davis, J., & Lewis, D: Predicting the "Revolving Door Phenomenon" among patients with schizophrenic schizoaffective, and affective disorders. American Journal of Psychiatry, 1995, 152(6):856-861.

Grossman, L.S., Haywood, T.W., Cavanaugh, J.L., Davis J.M, Lewis, D.A: State psychiatric hospital patients with past arrests for violent crimes. Psychiatric Services, 1995; 46(8):790-795.

Kravitz, H.M., Haywood, T.W., Kelly, J., Wahlstrom, C., Liles, S., Cavanaugh, J.L: Medroxyprogesterone treatment for paraphiliacs. Bulletin of the American Academy of Psychiatry & Law, 1995; 23(1):19-33.

Cavanaugh, J.L., Brakel, S.J., Haywood, T.W: Mentally disordered offenders: Clinical, political and legal developments in the United States. Psychiatry, Psychology and Law, 1994; 1(2):71-79.

Wasyliw, O.E., Haywood, T.W., Grossman, L.S., Cavanaugh, J.L: The psychometric assessment of alcoholism in forensic groups: The MacAndrew Scale and response-bias. Journal of Personality Assessment, 1993; 60:252-266.

Grossman, L.S., Cavanaugh, J.L., Haywood, T.W: Deviant sexual responsiveness on penile plethysmography: Pedophiles vs. normal control subjects. Journal of Nervous and Mental Disease, 1992; 180(3):207-208.

Grossman, L.S., Haywood, T. W., Ostrov, E., Wasyliw, O.E., Cavanaugh, J.L: Efficacy of MMPI validity scales in mandatory fitness-for-duty police evaluations. Journal of Personality Assessment, 1990; 55:549-561.

Haywood, T.W., Grossman, K.S., Cavanaugh, J.L: Subjective vs. objective measures of deviant sexual arousal in clinical evaluations of pedophiles. Journal of Consulting and Clinical Psychology, 1990; 2:269-275.

Grossman, L.S., Cavanaugh, J.L: Psychopathology and denial in sex offenders. Journal of Nervous and Mental Disease, 1990, 178:739-744.

Ehrman, C. M., Funk, G., Cavanaugh, J.L: Psychiatric DRGs: More risk of hospitals? Journal of Health CareMarketing, 1989; 9:67-71.

Grossman, L.S., Cavanaugh, J.L: Do sex offenders minimize psychiatric symptoms? Journal of Forensic Sciences, 1989; 34:881-116.

Wasyliw, O.E., Cavanaugh, J.L., Grossman, L.S: Clinical considerations in the community treatment of mentally disordered offenders. International Journal of Law and Psychiatry, 1989; 1(1):371-380.

James L. Cavanaugh, Jr, M.D.
Page 8

Wasyliw, O.E., Grossman, L.S., Haywood, T.W., Cavanaugh, J.L.: The detection of malingering in criminal forensic groups: MMPI validity scales. Journal of Personality Assessment, 1988; 52:549-563.

Ostrov, E., Cavanaugh, J.L.: Validation of police officer recruits' self-reported drug use. Journal of Forensic Sciences, 1987; 32:496-502.

Busch, K., Cavanaugh, J.L.: The study of multiple murder: Preliminary examination of the interface between epistemology and methodology. Journal of Interpersonal Violence, 1986; 1:5-22. Busch, Cavanaugh, J.L.: Physical examinations of psychiatric outpatients. Medical and legal issues. Hospital and Community Psychiatry, 1985; 36:958-961.

Cavanaugh, J.L., Grossman, L.S: Domestic violence: A family affair. Current Clinical Briefs, 1985; 4:3-5.

Cavanaugh, J.L., Wasyliw, O.E: Treating the NGRI outpatient: A two year study. Bulletin of the American Academy of Psychiatry and the Law, 1985; 13:407-415.

Cavanaugh, J.L., Wasyliw, O.E: Adjustment of the Not Guilty by Reason of Insanity (NGRI) outpatient: An initial report. Journal of Forensic Sciences, 1985; 3:24-30.

Wasyliw, O.E., Cavanaugh, J.L., Rogers, R: Beyond the scientific limits of construct validity. Bulletin of the American Academy of Psychiatry and the Law, 1985; 13:147-158.

Rogers, R., Wasyliw, O.E., Cavanaugh, J.L: Evaluating insanity: A study of construct validity. Law and Human Behavior, 1984; 3:293-303.

Rogers, R., Thatcher, A., Cavanaugh, J.L: Use of the SADS diagnostic interview in evaluating insanity. Journal of Clinical Psychology, 1984; 40:1537-1541.

Cavanaugh, J.L: The state of the public mental health care system in Illinois - to find another way. Proceedings of the Institute of Medicine of Chicago, 1983; 36:111-113.

Rogers, R., Cavanaugh, J.L: Usefulness of the Rorschach: A survey of forensic psychiatrists. Journal of Psychiatry and the Law, 1983;11:56-67.

Rogers, R., Dolmetsch, R., Cavanaugh, J.L: Identification of random responders on MMPI protocols. Journal of Personality Assessment, 1983; 47:364-368.

Rogers, R., Cavanaugh, J.L. Seman, W., Harris, M: Legal outcome and clinical findings: A study of insanity evaluations. Bulletin of the American Academy of Psychiatry and the Law, 1984; 12(1):75-83.

Rogers, R., Cavanaugh, J.L: "Nothing but the truth"... A re-examination of malingering. Journal of Psychiatry and the Law, 1983; 11:443-460.

Cavanaugh, J.L., Busch, K: The rebirth of forensic psychiatry: Challenge for the 80's, Current Clinical Briefs, 1982; 2:3-5.

Cavanaugh, J.L., Rogers, R: Convergence of mental illness and violence: Effects on public policy. Psychiatric Annals, 1982; 12(5):537-541.

Cavanaugh, J.L., Rogers, R., Wasyliw, O.E: A computerized assessment program for forensic science evaluations: A preliminary report. Journal of Forensic Sciences, 1982; 27(1):113-118.

James L. Cavanaugh, Jr., M.D.
Page 9

Rogers, R., Cavanaugh, J.L. Usefulness of the Rorschach: A survey of forensic psychiatrists. Journal of Psychiatry and the Law. 1983; 11:55-67.

Rogers, R., Dolmetsch, R., Cavanaugh, J.L. Identification of random responders on MMPI protocols. Journal of Personality Assessment. 1983; 47:364-368.

Schetky, D.H. & Cavanaugh, J.L. Child psychiatry perspective: psychiatric malpractice. Journal of the American Academy of Child Psychiatry. 1982, 21(5): 521-526.

Wettstein, R., Kelly, J., & Cavanaugh, J.L. A pharmacological approach to sexually deviant behavior in the community. Journal of Sociology of the Family. 1982, 12: 155-162.

Rogers, R., Cavanaugh, J.L., & Dolmetsch, R. The SADS diagnostic interview in insanity evaluations: An exploratory study. Psychological Reports, 1981, 49: 135-138.

Rogers, R., Cavanaugh, J.L., & Dolmetsch, R. An empirical approach to insanity evaluations. Journal of Clinical Psychology. 1981, 37: 683-687.

Rogers, R., & Cavanaugh, J.L. Application of the SADS diagnostic interview to forensic psychiatry. Journal of Psychiatry and Law. 1981, 160: 164-169.

Cavanaugh, J.L., Rogers, R.R., & Price, B. The insanity defense in Illinois - a psychiatric perspective. Bulletin of the American Academy of Psychiatry and the Law, 1981, 8(1): 56-61.

Cavanaugh, J.L., & Rogers, R. A consultation model for post-doctoral training in forensic psychiatry. Bulletin of the American Academy of Psychiatry and the Law, 1980 8(4); 373-380.

Cavanaugh, J.L. NGRI acquittees in Illinois. Ohio Forensic Reporter. 1980 1(1): 19-22.

Cavanaugh, J.L., & Rogers, R. The Isaac Ray Center: A clinic for mentally disordered offenders. American Journal of Forensic Psychiatry. 1980, 1: 4-19.

Mitchell, R., Rogers, R., Cavanaugh, J.L., & Wasyliw, O.E. Role of trait anxiety in violent and non-violent delinquent behavior. American Journal of Forensic Psychiatry, 1980, 1: 20-28.

Rogers, R., & Cavanaugh, J.L. Differences in select psychological variables between criminally responsible and insane subsamples. American Journal of Forensic Psychiatry, 1980, 1: 29-37.

Levie, C., Cavanaugh, J.L., & Weiner, B. The new mental health code-promise and prospects for Illinois physicians. Illinois Medical Journal. 1979 156(1): 21-26.

Rogers, R., Ciula, B., & Cavanaugh, J.L. Aggressive and socially disruptive behavior among maximum security psychiatric patients. Psychological Reports, 1979, 46: 291-294.

Cavanaugh, J.L. Theory and practice for the emerging psychopolitician. Current Concepts in Psychiatry, 1978, 6-14.

Cavanaugh, J.L., & Flood, J. Psychiatric consultations in the general hospital: A review and a new report. International Journal of Psychiatry in Medicine, 1977, 7(3): 193-207.

Cavanaugh, J.L. Career decisions in the early post-residency years. American Journal of Psychiatry, 1975, 132: 277-280.

James L. Cavanaugh, Jr., M.D.
Page 10

Cavanaugh, J.L. Rehabilitation and chronic mental illness, British models. Mental Health and Society, 1974, 1: 196 - 197.

Fox, R.R., Cavanaugh, J.L., & Zarrow, M.X. Influence of age on the response of the immature rabbit ovary of pregnant mares' serum (PMS). Endocrinology, 1964, 75: 411-416.

## BOOK CHAPTERS

Gratzer, T.G., Gruenberg, L.F, Cavanaugh, J.L., Brakel, S.J. Treatment of mentally disordered offenders. In Michels, R. (ed.). Psychiatry, Volume 3, Second Edition. Philadelphia, PA, Lippincott-Raven, 1995.

Cavanaugh, J.L., & Maxwell, S. The physician expert in malpractice litigation. In Zaremski, M., & Goldstein, L.D. (Eds): Hospital and Medical Law and Practices. Deerfield, IL: Callahan and Company, 1990.

Busch, K., & Cavanaugh, J.L. Psychiatric issues in multiple murder: A contemporary analysis. In Hertzberg, L.J., Field, J., & Ostrom, G. (Ed): The Handbook of Violence and Prevention, Vol. 2. New York: Pergamon Press 1989.

Cavanaugh, J.L., & Marciniak, R.D. "Atypical impulse control disorder: Considerations for diagnosis and treatment." In Karasu, T.B. (Ed): Treatment of Psychiatric Disorders: A Task Force Report of the American Psychiatric Association. Washington, D.C.: American Psychiatric Association Press, 1988.

Foster, L.M., & Cavanaugh, J.L. "Regulation of the practice of psychiatry." The Illinois Mental Health Professional's Law Handbook, Chicago, 1988.

Amabile P., & Cavanaugh, J.L. "Legal liability for tardive dyskinesia: Guidelines for practice." In Wolfe, M.E. & Mosniam, A.D. (Eds): Tardive Dyskinesia: Biological Mechanisms and Clinical Aspects.

Cavanaugh, J.L., Wasyliw, O.E., Rogers, R. Treatment of mentally disordered offenders. In Cavenar, J.O. (Ed.): Psychiatry. Philadelphia, J. B. Lippincott Co., 1985.

Weiner, B., Simons, V.A., Cavanaugh, J.L. The child custody dispute. In Schetky, D.H., Benedek, E.P. (Eds.): Child Psychiatry and the Law. Volume II. New York, Brunner/Mazel, 1985.

Kelly, J.R., Cavanaugh, J.L. Treatment of the sexually dangerous patient. In Masserman, J. (Ed.): Current Psychiatric Threapies. Volume 21, New York, Grune & Stratton, 1982.

Cavanaugh, J.L., Rogers, R., Wasyliw, O.E. Mental illness and antisocial behavior. In Reid, W.H. (Ed.) Treatment of Antisocial Syndromes. New York, Van Nostrand-Reinhold, 1981.

James L. Cavanaugh, Jr., M.D.
Page 11

## PUBLISHED ABSTRACTS

Kravitz, H., Cavanaugh, J.L.: Correlates of criminal acts by mentally ill women. [Abstract S21]. American Academy of Psychiatry and the Law 2001 Annual Meeting Program. Boston, MA, American Academy of Psychiatry and the Law, 2001; 32:69-70.

Cavanaugh, J.L: The role of psychiatric consultation in the implementation of SVP acts. Twenty-fourth International Congress on Law and Mental Health Abstracts. Toronto, Cavada, 1999; 163-4.

Hartman, D.E., Fletcher, T.A., Kravitz, H., Haywood, T.W., Cavanaugh, J.L: Impaired professional: The Answer changes the question. [Abstract T14]. American Academy of Psychiatry and the Law 1999 Annual Meeting Program. Baltimore, Maryland, 1999; 30:19-20.

Haywood, T.W., Kravitz, H.M., Cavanaugh, J.L.: Profiling sexual deviance: PG and VRT technologies (Abstract T18). American Academy of Psychiatry and the Law, 1999 Annual Meeting Program. Baltimore, Maryland, 1999; 30-22-23.

Cavanaugh, J.L.: Recent changes to sexual offender statues in the USA. Abstract 1. In the Syllabus for the Annual Meeting of the Royal Australian and New Zealand College of Psychiatrist, Section of Forensic Psychiatry. Sunshine Coast, Queensland, July –12, 1998.

Cavanaugh, J. L.: The history and the development of the Isaac Ray Center, Abstract 6, in the Syllabus for the Annual Meeting of the Royal Australian and New Zealand College of Psychiatrist, Section of Forensic Psychiatry. Sunshine Coast, Queensland, July –12, 1998.

Cavanaugh, J. L.: Violence in the workplace. Abstract 12, in the Syllabus for the Annual Meeting of the Royal Australian and New Zealand College of Psychiatrist, Section of Forensic Psychiatry. Sunshine Coast, Queensland, July –12, 1998.

Cavanaugh, J. L.: How to establish a civil forensic practice. Abstract 18, in the Syllabus for the Annual Meeting of the Royal Australian and New Zealand College of Psychiatrist, Section of Forensic Psychiatry. Sunshine Coast, Queensland, July –12, 1998.

Flecther, T.A., Hartman, D.E., Haywood, T.W., Cavanaugh, J.L.: Fitness for duty: A multi-modal approach (Abstract S14). American Academy of Psychiatry and the law 1998 Annual Meeting Program. 1998; 29-72.

Brakel, S.J., St. Pieere, A., Hartman, D.E., Cavanaugh, J. L: Law, psychiatry and preventing workplace violence. (Abstract T2). America Academy of Psychiatry and the Law 1997 Annual Meeting Program, 1997; 28:76-77.

Hawyood, T.W., Rigsbee, S., Kravitz, H.M., Freeman, A., Goldman, L., Cavanaugh, J.L: Women in jail: Dual diagnosis and other problems. (Abstract S10). American Academy of Psychiatry and the Law 1997 Annual Meeting Program: 1997; 28-60.

Kelly, J.R., Wilson R. L., Karavitz, H.M., Haywood, T. W., Cavanaugh, J. L.: Outpatient treatment for NGRI-issues and outcomes. (Abstract Z5). American Academy of Psychiatry and the Law 1997 Annual Meeting Program: 1997; 28: 76-77.

Brakel, S. J., Sanders, R., Freeman, A., Pan, P., Weinstein, H.C., Cavanaugh, J. L.: Forensic fellowships in corrections (Abstract T6). American Academy of Psychiatry and the Law 1997 Annual Meeting. 1996: 27:13-14.

James L. Cavanaugh, Jr., M.D.
Page 12

## PUBLISHED ABSTRACTS (cont.)

Cavanaugh, J. L.: Medical mapractice: Current trends in the U.S. Medical Assocation of Rio Grande de Sol (Ed.), Defensive Medicine: Problems and Soultions. (In Portugese). Porto Alegre, Brazil, 1996; pp. 27-35.

Cavanaugh, J.L.: Mesa-redonda: Medicdas preventives contra os processos indenizatorios. In Associacao Medical do Rio Grande do Sul (medical Association of Rio Grande de Sol) (Ed.) Medicina Defensiva: Problema ou Solucao. (Defensive medicine: Problems and solutions) (In Portugese). Porto Alegra, Brazil. 1996; pp. 53-59

Cavanaugh, J. L.: Assignment of psychological damages. Medical Assocation of Rio Grande de Sol (Ed.). Defensive Medicine: Problems and Soultions. (In Portugese). Porto Alegre, Brazil, 1996; pp 87-107.

Brakel, S. J., Sanders, R., Freeman, A., Alaimo, C., Cavanaugh, J.L.: Private psychiatry in a large urban jail (AbstractS20). American Academy of Psychiatry and the Law Annual Meeting. 1995; 26:72.

Cavanaugh, J.L., Jaywood, t.W., Goldberg, J., Kravitz, H. M: Development factors in cleric sexual misconduct. (Abstract T10). American Academy of Psychiatry and the Law Annual Meeting. 1995; 26:16-17.

Harman, D.E., Hunter, S. J., Sivan, A.B., Kravitz, H.M., Cavanaugh, J.L.: Neuropsychological tst sensitivity in professionals (Abstract T9) ). American Academy of Psychiatry and the Law Annual Meeting. 1995; 26:15-16.

Schetky, D. H., Cavanaugh, J.L., Serittella, J.A., Griffity, E.E.H: Sexual abuse by the clergy. (Abstract F20). American Academy of Psychiatry and the Law Annual Meeting. 1995; 26:17-18.

Cavanaugh, J.L., Dauer, R. E., Martell, D.A., Mayberg, H.S., Mose, S. J., Relkin, N.R., Weiss, Z., Restak, R.M: (Modertaor): Neuropsychiatry in the courtroom. American Neuropsychiatric Association Annual Meeting. 1995; 7(3); 399.

Hawyood, T. W., Kravitz, H.M, Grossman, L.S., Davis, J.M., Lewis, D.A., Cavanaugh, J. L.: What predicts repeat psychiatric hospitalizations? Scientific Proceedings of the 150th Annual Meeting of the American Psychiatric Association. 1994; 147:44.

Cavanaugh, J.L., Annon, J., McClung, M.R: Mock trial -- Insanity defense. (Abstract F16). American Academy of Psychiatry and the Law Annual Meeting. 1994; 25;41.

Janik, J., Kravitz, H.M, Cavanaugh, J.L: Domestic stress and its association with police suicide. (Abstract Z15). ). American Academy of Psychiatry and the Law Annual Meeting. 1994; 25:83-84.

Kelly, J.R., Liles, S. Kravitz, H.M., Haywood, T.W., Cavanaugh, J. L: MPA and praphiles -- Do tesosterone levels matter? (Abstract S20). American Academy of Psychiatry and the Law Annual Meeting. 1994 25; 67-68.

McClung, M.R., Cavanaugh, J.L., Krvitz, H.M., Haywood, T.W: "Pan-arousal" in sex offenders on plethysmography. (Abstract F4). American Academy of Psychiatry and the Law Annual Meeting. 1994; 25:68-69.

Missett, J.R., Vossekuil, B., Cavanaugh, J.L., Weinstock R: Ethical issues in Secret Service evaluation of threats, (Abstract F4). American Academy of Psychiatry and the Law Annual Meeting 1994; 25:32-33.

Haywood, T.W., Grossman, L.S., Davis J.M., Lewis, D.A., Cavanaugh, J.L: Severe psychiatric disorder and violence: Diagnostic features. American Academy of Psychiatry and the Law Annual Meeting.1993.

James L. Cavanaugh, Jr., M.D.
Page 13

**PUBLISHED ABSTRACTS** (cont.)

Grossman, L.S., Haywood, T.W., Fitchner, C. G., Davis, J.M., Cavanaugh, J.L., Lewis, D.A: Medication Non-compliance with severe psychiatric illness.  American Academy of Psychiatry and the Law  Annual Meeting. 1993.

Kelly, J., Cavanaugh, J.L., Liles, S., Haywood, T.W., Kravitz, H.M: Treating paraphilia with MPA: Evaluation and outcome. (Abstract S66). American Academy of Psychiatry and the Law Annual Meeting. 1993; 24:59-60.

Wahlstrom C., Haywood, T.W., Kravitz, H.M., McClung, M.R., Cavnaugh, J.L: Treating praphiles with MPA: Is arousal lowered? (Abstract S69) American Academy of Psychiatry and the Law  Annual Meeting. 1993; 24:61.

Arambula, M.R., Mayberg, H., Brakel, S.J, Cavanaugh, J.L: The PET defense in criminal cases (Abstract S81) American Academy of Psychiatry and the Law Annual Meeting. 1993: 24:69.

Cavanaugh, J.L., Brakel, S. J., McClung, M., Arambula, M., Mayberg, H: The "neurological defense" in criminal cases (Abstract T3). American Academy of Psychiatry and the Law  Annual Meeting. 1993:33(9):2A.

Granacher, R.P., Simon, R.I., Cavanuarh, J.L: Private practice skills in civil litigation forensic psychiatry. (Abstract Z95). American Academy of Psychiatry and the Law Annual Meeting. 1993: 24-:81.

Hipshman, L., Cavanaugh, J.L. Bradford, J.M., Specia, J.J., Ullman, R. J., LeGrand, G: Mock trial: The diocese, the psychiatrist, the clergyman and his victim. (Abstract F56). American Academy of Psychiatry and the Law Annual Meeting. 1993; 24:50.

Haywood, T.W., Wahlstrom C., Kravitz, H.M., Green, J., Cavanaugh, J.L., Kelly, J: Denial among paraphilic patients in MPA treatment. Scientific Proceedings of the 149th Annual Meeting of the American Psychiatric Association. 1993; 146:195-196.

Kravitz, H.M., McClung, M.R., Haywood, T.W, Liles, S., Grossman, L.S., Cavanaugh, J.L: Cleric sexual misconduct and assessment of deviance. Scientific Proceedings of the 149th Annual Meeting of the American Psychiatric Association. 1993; 146:216.

Cavanaugh, J.L., Haywood, T.W., Grossman, L.S., Lewis, D.A., Davis, J. M: Violence and mental illness: Does diagnosis matter? Presented at the 23rd Annual Meeting of the American Academy of Psychiatry and the Law. Boston, MA, October 1-18, 1992.

Wasyliw, O.E., Ganellen, R. J., Grossman, L.S., Cavanaugh, Haywood, T.W: Projective approaches to the assignment of malingering. Presented at the 23rd Annual Meeting of the American Academy of Psychiatry and the Law. Boston, MA, October 15-18, 1992.

Brakel, S. J., Wahlstrom C., Cavanaugh, J.L., Kelly, J.R., Hardy, D.W: "Inside the Jeffrey Dahlmer Case" Presented at the 23rd Annual Meeting of the American Academy of Psychiatry and the Law. Boston, MA, October 15-18, 1992.

Grossman, L.S., Cavanaugh, J.L., Maywood, T.W., Davis, J.M., Lewis, D.A: Violent crime and mental illness: Diagnostic trends. Proceedings of the 145th Annual Meeting of the American Psychiatric Association. Washington, D.C., 1992.

James L. Cavanaugh, Jr., M.D.
Page 14

Grossman, L.S., Haywood, T.W., Cavanaugh, J. L., Liles, S: Deviant sexual responsiveness on penile plethysmography using visual stimuli: Alleged child molesters versus normal control subjects Scientific Proceedings of the 22nd Annual Meeting of the American Academy of Psychiatry and the Law. Orlando, FL. October 17-20, 1991.

Kelly, J.R., Cavnaugh, J.L., Liles, S., Serritella, J., Goedert, R: Clergy and sexual misconduct: Clinical, legal and divine intervention. Scientific Proceedings of the 22nd Annual Meeting of the American Academy of Psychiatry and the Law. Orlando, FL. October 17-20, 1991.

Cavanaugh, J.L, Vossekuil, B.M., Melson, K.E: Psychiatric, legal and social aspects of protecting the President. Scientific Proceedings of the 43rd Annual Meeting of the American Academy of Forensic Sciences. Anaheim, CA, February 18-23, 1991.

Grossman, L.S., Haywood, T.W., Cavanaugh, J.L: Pedophiles and normal control subjects: A comparison using penile plethysmograpy. Scientific Proceedings of the 42rd Annual Meeting of the American Academy of Forensic Sciences. Cincinnati, OH. February 19-14, 1990.

Grossman, L.S., Cavanaugh, J.L, Haywood, T.W: The pedophilic patient andpenile plethysmography. Scientific Proceedings of the 142nd Annual Meeting of the American Psychiatric Association. 1989; 121-122.

Grossman, L.S., Cavanaugh, J.L, Haywood, T.W., Wasyliw, O.E: Do paraphilic patients deny psychiatric symptoms: Scientif Proceedings of the Annual Fall Weekend Meeting of the Illinois Psychiatric Society. Chicago, IL, October 28, 1989.

Cavanaugh, J.L., Litman,R., Jacobs, D., Hermann, D.H.J: The psychological autopsy in the courtroom. Scientific Proceedings of the 19th Annual Meeting of the American Academy of Psychiatry and the Law. San Francisco, CA, October 20-23, 1988.

Grossman, L.S., Haywood, T.W., Cavanaugh, J.L: Do sex offenders minimize psychiatric symptoms? Scientific Proceedings of the 41st Annual Meeting of the American Academy of Forensic Sciences. Las Vegas, NV 120,1998.

Billick, S.B., Cavanaugh, J.L, Wallce, M., Sadoff, R.L: Narco-analysis in forensic psychiatry. Scientific Proceedings of the 19th Annual Meeting of the American Academy of Psychiatry and the Law. San Francisco, CA, October 20-23, 1988.

Cavanaugh, J.L, Ostrov, E., Inwald, R., Girada, M., Janik, J: Police-related psychiatric/psychological evaluations. Scientific Proceedings of the 19th Annual Meeting of the American Academy of Psychiatry and the Law. San Francisco, CA, October 20-23, 1988.

Wasyliw, O.E., Cavanaugh, J.L: Simulation of brain damage: Assessment and decision rules. Scientific Proceedings of the 19th Annual Meeting of the American Academy of Psychiatry and the Law. San Francisco, CA, October 20-23, 1988

Wasyliw, O.E., Grossman, L.S., Cavanaugh, J.L., Haywood, T.W: Do insanity defendants malinger? Scientific Proceedings of the 140th Annual Meeting of the American Psychiatric Association. Chicago, IL, May, 1987.

Cavanaugh, J.L., Muoulton, J., Tomsick, T.A., Wasyliw, O.E.: Forensic evaluation of head injury. Scientific Proceedings of the 19th Annual Meeting of the American Academy of Psychiatry and the Law. Midwest Chapter. Cincinnati, OH, April, 1987.

James L. Cavanaugh, Jr., M.D.
Page 15

### PUBLISHED ABSTRACTS (cont.)

Cavanaugh, J.L., Grossman, L.S., Carney, C.M., Barker, K.P., McDonnell, P: Forensic psychiatry and the United States Secret Service. Scientific Proceedings of the 18th Annual Meeting of the American Academy of Psychiatry and the Law. Ottawa, Canada, 1987.

Kelly, J.R., Grossman, L.S., Liles, S., Cavanaugh, J.L: Techniques in the evaluation and treatment of sex offenders. Scientific Proceedings of the Annual Meeting of the Illinois Psychiatric Society. Chicago, IL, November 6-7, 1987.

Kelly, J.R., Cavanaugh, J.L: What is the standard of practice in the clinical prediction f dangerousness? Scientific Proceedings of the Annual Meeting of the Illinois Psychiatric Society. Chicago, IL, September 26-28, 1986.

Cavanaugh, J.L, Markos M: Forensic evaluations of multiple personality disorder. Scientific Proceedings of the International Conference on Multiple Personality/Dissociative States. Chicago, IL, October 24-27, 1985.

Wasyliw, O.E., Cavanaugh, J.L: Treating the NGRI outpatient: A two-year study. Scientific Proceedings of the Annual Meeting of the Illinois Psychiatric Society. Paradise Island, Bahamas, October, 1984.

Wasyliw, O.E., Cavanaugh, J.L.: Adjustment of the NGRI outpatient: An initial report. Scientific Proceedings of the 36th Annual Meeting of the American Academy of Forensic Sciences. Anaheim, CA. 1983.

### GRANTS AWARDED

Illinois Department of Mental Health and Developmental Disabilities, Contract Research Grant "Evaluation of Treatment Outcome of the NGRI Patient." - $58,000. Principal Investigator, 1981 - 1982.

Illinois Department of Mental Health and Developmental Disabilities-$334,000 (1979-2001), awarded yearly, for the court ordered ambulatory treatment of NGRI acquittees.

Illinois Department of Mental Health and Developmental Disabilities, Extramural Grant #8306H "Patterns of Treatment Response and Adjustment in the NGRI Outpatient." - $24,000. Principal Investigator, 1982 - 1983.

Chicago Community Trust & the Illinois Department of Mental Health and Developmental Disabilities Research Contract: "Recidivism Rates of Discharged Patients in the Chicago Area." - $554,000 (1984 -1986). Dan Lewis, Ph.D. (principal investigator); John Davis, M D & James Cavanaugh, M.D. (co-investigators)

Cook County Board of Commissioners - $4.1 Million (1994-1997). Isaac Ray Center contract to provide psychiatric and psychological services to detainees, Cook County Jail. James L. Cavanaugh, Jr., Principal supervisor. Re-awarded in 1997 ($4.5 million); in 2000 ($5.4 million); in 2003 ($6.9 million); in 2006-2010 ($10.4 million).

Cook County Board of Commissioners - $9.2 million (2006-2010). Isaac Ray Center contract to provide mental health services to detained youth at the Juvenile Temporary Detention Center of Cook County pursuant to Doe v. Cook County; Renewed (2010-2013) - $16 million.

James L. Cavanaugh, Jr., M.D.
Page 16

**PRESENTATIONS**

On Request (see Isaac Ray Center, Inc. Annual Reports, Section on Psychiatry and the Law, Department of Psychiatry, Rush University Medical Center, 1978 – 2000 and 2003-2005 in (section archives); on request, additional abstracts 2006-2008.

Approximately 600 local, national, and international presentations, since 1973.